## Case No. 1,945.

BROOKS et al. v. BICKNELL et al.

[4 McLean, 64;[1] 3 West. Law J. 35; 1 Fish. Pat. Rep. 65.]

Circuit Court, D. Ohio. July, 1845.

PATENTS—ASSIGNMENT—REISSUE—RIGHTS OF ASSIGNEE.

1. Under the act of 1836, the renewal of a patent does not enure to the benefit of the assignee, unless by the terms of the assignment, such benefit was secured.

2. A general assignment conveys only an interest during the term for which the patent was granted. Any other construction would defeat the expressed object of the law authorizing a renewal of the patent.

[Cited in Jenkins v. Nicolson Pavement Co., Case No. 7,273.]

[In equity. Bill to enjoin infringement of a patent. For decree dissolving an injunction theretofore granted, see preceding case, No. 1,944. An issue out of chancery as to the validity of the patent and renewal was tried by a jury, and a verdict rendered for defendants. See Brooks v. Jenkins, Case No. 1,953. And thereafter a motion to set aside the verdict and for a new trial of the issue

was denied. See Case No. 1,946. For a detailed statement of the facts of this litigation, see preceding case, No. 1,944. The following opinion appears to have been rendered during the progress of the suit.]

Wright, Coffin & Miner, for plaintiffs.
Walker & Galloway, for defendants.

McLEAN, Circuit Justice. "A question is made whether the assignment of the patent by the original patentee, does not, on the renewal of it, enure to the benefit of the assignee." By the 11th section of the act of 4th of July, 1836 [5 Stat. 121], a patent is made assignable in law, either as to the whole interest, or any individual part thereof, etc., "which assignment is required to be recorded in the patent office, in three months from the execution thereof." The 18th section of the same act, which authorizes, on the conditions stated, a renewal of the patent, provides, that "the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented, to the extent of their respective interest therein." If the question turned upon these two provisions, and no reference were had to the interest assigned, and the object of the government in granting a renewal of the patent, the renewal would seem to enure to the benefit of the assignee. Such was my impression on an application for an injunction in the above case, at chambers, as appears from the 154th page of the fourth number of the Western Law Journal, vol. i. [Case No. 1,944]. This question, however, was not involved in the point then under consideration. The patent had been assigned in part only. The remarks were made incidental and without examination; and I am now convinced that the view, rather intimated than expressed, in its broadest sense, and without qualification, is not sustainable.

Before the act of 1836, patents were renewable only by application to congress. But in the 18th section of the above act, the secretary of state, the solicitor of the treasury, and the commissioner of patents, were constituted a board to grant renewals of patents on the conditions and in the mode provided. "And," the section provides, "if, upon a hearing of the matter, it shall appear to the full and entire satisfaction of said board, having due regard to the public interest therein, that it is just and proper that the term of the patent should be extended, by reason of the patentee, without neglect or fault on his part, having failed to obtain, from the use and sale of his invention, a reasonable remuneration for his time, ingenuity, and expense bestowed upon the same, and the introduction thereof into use, it shall be the duty of the commissioners to renew and extend the patent," etc. From this provision. it is clear, that the right of renewal is limited to the patentee, whether

[4] [From 1 West. Law J. 150.]
[1] [Reported by Hon. John McLean, Circuit Justice.]

he retains or has sold his invention. The remuneration contemplated by the statute, as having been received "from the use and sale of the invention," embraces the case where the entire patent has been sold or assigned. Now, if the benefit of the renewal, in such a case, shall enure to the assignee, how much is the patentee benefited? The renewal was granted on his application and at his expense; and the object of the law, in authorizing a renewal, is to give to the patentee "a reasonable remuneration for his time, ingenuity and expense." It is plain, therefore, that if the assignee realize the benefit of the renewal, the object of the law is defeated, and the solemn action of the board is worse than useless. Nothing could be more inconsistent or preposterous, than the action of a board constituted of high functionaries of the government, and vested with powers to make the above inquiry, and to extend the patent, at the expense of the patentee, if all the benefit of such extension shall result to the assignee, and this, too, under the express intention of remunerating the patentee. Where the assignment of the patent is only in part, the principle is the same, the difference being in the degree of interest only. The same section, it will be observed, which gives the ground on which the patent shall be renewed, makes the provision in behalf of the assignee: and can it be supposed that congress intended by this provision to defeat the intention of the renewal, so plainly expressed and provided for in the same section? No known rule of construing statutes can sustain this view; and the force of this view is not weakened by any of the considerations suggested. It may be admitted that congress had power to prescribe any conditions which they deemed proper, on the renewal of the patent. Congress had power, unquestionably, to refuse a renewal. The inquiry is not what congress had power to do, but what they have done.

The assignment transferred only the interest expressed on its face. No right, beyond the term named in the original patent, was conveyed by the assignment, unless so specified. But it is said that the assignee had ground to expect, when the patent expired, that he, in common with others, would have a right to use it; and that to deny him this right would be unjust. When he purchased the patent, in whole or part, he knew, or at least must have presumed to have known, that the patent could be renewed by congress, and as a prudent man, he should have provided for such a contingency, in his contract of assignment, and what, under a renewal, would be a just provision in behalf of the assignee. For the time of the patent, he has not only had the right to use the machine, but to sell the invention to others. Now, no hardship results to the assignee from the renewal, unless he has a machine in operation which is necessarily suspended by the extension of the patent. The assignee could not claim, on any supposed ground of hardship, anything beyond the use of the machine or machines he may have in operation at the time of the renewal of the patent. But, under the construction claimed for the assignee, he not only takes the use of the machine, if the assignment was a general one, but the entire beneficial interest in the renewed patent. Such a construction is in direct opposition to the declared intention of the act. In some cases, where the patent has been extended by act of congress, the right to use the machine, as in the case of Oliver Evans, was secured to purchasers; but in other cases no such right was reserved. Nothing, therefore, can be inferred favorable to the pretensions of the assignee from the special acts of congress: and if, in every case, congress had reserved to the assignee the right to use the thing patented, it would not sustain the claim of the assignee to the extent as now urged. There is no precedent or usage in the government, which goes to strengthen such claim. It must depend, wholly, upon the 1st section of the act of 1836; and, as has been shown, the construction contended for would go to defeat the obvious intention of the statute.

Some other interpretation of the section must be given, which shall make it consistent with itself, and effectuate the intention of the legislature; and this can be done without difficulty. By the 18th section, "the benefit of the renewal is extended to the assignees of the patent to the extent of their interests therein." Now, where the assignment provides, that in the event of a renewal of the patent, the same interest shall be continued to the assignee, the above provision gives a legal effect to it. As before remarked, the assignment of the patentee being general, would only transfer an interest during the patent; and if it had been special, of the same interest, should the patent be renewed, there would be no legal transfer of the renewed patent, had not such an interest been protected by the 18th section. Without this provision, the assignment might have been continued on agreement to convey; but it would not have been a legal conveyance of the patentee's right. He could not convey a legal title to that which was not in use; and from this it will be perceived that full effect is given to the assignment under the above section. This, it appears to me, is a fair construction of the statute. It harmonizes the provisions of the statute, and gives effect to the intention of the parties. The act of 1836 gives no authority to renew a patent, except for the benefit of the patentee. Consequently, where the entire patent has been assigned, if the assignee has the full benefit of the extension, there can be no renewal. If this had been the view of congress, they would have said so. They would have provided, that where a patent had not been assigned, it might be renewed.

But they have said no such thing. The provision for renewal extends, as well to a case where the patent had been assigned, as where it had not been. The policy of the statute is a benign one. Its design is to foster genius and reward merit. Nothing can be more notorious than the poverty of great inventors. The few exceptions that may be named, show the generality and truth of the remark. Men whose minds are excited by the hope of discoveries, do not accumulate property. Absorbed by the highest mental operations, they naturally become indifferent to everything else. They remain poor, while their inventions add prosperity, wealth and glory, to their country. It is said that the inventor of the gas lights of London, was a penniless wanderer on the walks of that great city, which his genius had lighted. Fulton, and many others, might be named as the greatest benefactors of the ages in which they lived, but who were almost destitute of the means of living. This was known to the congress of 1836, and the above act was provided to deal justly, if not liberally, with inventors. In proportion to the poverty of these men, would be the necessity to sell and transfer their inventions; and this, often before their value had been fully ascertained. The act intended to provide for such cases. Some may call it a munificent act; but with much greater propriety it may be denominated an act of justice. Such, then, is the character and object of the act. Its policy is national. But, if the claims of the assignee be sustained, this policy must be disregarded and overthrown, and this to secure the rights of assignees, who may have no other merit than that which arises from the possession of means to purchase and speculate on the fruits of genius. It would indeed be singular, if such a motive were found in an act having in view the benefit of inventors. This would disregard the avowed intention of the act, and would sacrifice the greater to the lesser interest, and, as I think, does not necessarily follow from a full and fair construction of the act.

[NOTE. For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389, and to Gibson v. Van Dressar, Id. 5,402.]